## STATE v. J. N. DEAN.[1]

### July 8, 1921.

### No. 22,343.

**Sunday law — business of photographer — police power.**

The Sabbath day observance statute prohibits work on the Sabbath which intereferes with the repose and religious liberty of the community and is not work of necessity or charity, and it prohibits certain work, though it does not disturb the community, upon the ground that a periodic cessation from usual labor makes for the physical and intellectual and moral welfare of mankind. The basis of the latter prohibition is in the police power of the state exercised for the general good. Applying the statute, it is *held* that the business of a photographer is work within its meaning; that conditions are such that competition substantially induces all studios to be open if some are; that a numerous body are affected if studios are kept open, and thereby deprived of a day of rest or recreation or religious observance; that the prohibition of the statute applies to photographers taking pictures on Sunday and is a legitimate exercise of the police power, and the conviction of the defendant is sustained, though his work was not so conducted as to interfere with the repose and religious liberty of the community.

Defendant was tried before Montgomery, J., in the municipal court of Minneapolis and convicted of the offense of keeping his photograph

[1]Reported in 184 N. W. 275.

studio open for public patronage on what is commonly called the Sabbath day. Defendant's motion for a new trial was denied. From the judgment of conviction, defendant appealed. Judgment and order affirmed.

*Shearer, Byard & Trogner,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, *C. D. Gould,* City Attorney, and *Thomas B. Kilbride,* for respondent.

DIBELL, J.

The defendant was convicted in the municipal court of Minneapolis of keeping open his photographic studio and doing the work of taking pictures therein on the Sabbath day. He appeals from the judgment of conviction and the order denying a new trial.

The relevant provisions of the law are G. S. 1913, §§ 8752, 8753. Section 8752, which is somewhat by way of preamble, prohibits the doing of "certain acts in § 8753 specified, which are serious interruptions of the repose and religious liberty of the community, and the doing of any of said acts on that day shall constitute Sabbath breaking." Section 8753 provides that "hunting, shooting, fishing, playing, horse racing, gaming and other public sports, exercises, and shows; all noises disturbing the peace of the day; all trades, manufactures and mechanical employments, except works of necessity performed in an orderly manner so as not to interfere with the repose and religious liberty of the community; all public selling or offering for sale of property, and all other labor except works of necessity and charity are prohibited on the Sabbath day."

It is expressly provided that meals may be served by caterers, and prepared tobacco, fruits, confectionery, newspapers, drugs and medicines may be sold. The sale of uncooked meats, groceries, clothing or boots is not permitted. Works of necessity or charity are defined as including "whatever is needful during the day for good order, health or comfort of the community." Barbering is expressly excluded from the definition. Baseball playing, in an orderly manner, not interfering with the peace, repose and comfort of the community, is expressly permitted within certain hours of the afternoon.

The so-called preamble came into the statutes through the penal

code. It has been understood as evidencing a legislative policy not to require the strict cessation of all kinds of work, or to prohibit indulgence in recreation and amusements, when they do not interrupt the repose and religious liberty of the community. Thus in State v. Chamberlain, 112 Minn. 52, 127 N. W. 444, 30 L.R.A.(N.S.) 335, 21 Ann. Cas. 679, the words, "other public sports, exercises, and shows," were held, by reason of the preceding words with which they were associated, to refer to out-of-door amusements and not to prohibit moving picture shows conducted in an orderly manner. And in Houck v. Ingles, 126 Minn. 257, 148 N. W. 100, it was held that a contract for advertising space on the curtain of a theater conducted in an orderly fashion on Sundays was not invalid. So it was held in Holden v. O'Brien, 86 Minn. 297, 90 N. W. 531, that the casual execution and delivery of a promissory note on the Sabbath was not prohibited. And in Ward v. Ward, 75 Minn. 269, 77 N. W. 965, it was held that a private casual sale was not forbidden.

There is another aspect in which the Sabbath day observance statute is to be viewed. It is conceded that a periodic idle day, when people cease their usual activities and devote themselves to rest or recreation or amusement or association with their fellows, or give attention to what they deem religious duties or privileges, is best for the physical and moral and social welfare of the community. A statute which fixes a rest day with this thought in mind is enacted in the exercise of the police power. The foundation principle is well stated in State v. Petit, 74 Minn. 376, 77 N. W. 225, where the provision of the statute prohibiting barbering on the Sabbath was held valid. There Justice Mitchell said [p. 379]:

"The ground upon which such legislation is generally upheld is that it is a sanitary measure, and as such a legitimate exercise of the police power. It proceeds upon the theory, entertained by most of those who have investigated the subject, that the physical, intellectual and moral welfare of mankind requires a periodical day of rest from labor, and, as some particular day must be fixed, the one most naturally selected is that which is regarded as sacred by the greatest number of citizens, and which by custom is generally dedicated to religious worship, or rest and recreation, as this causes the least interference with business or existing customs."

And further on Justice Mitchell said:

"The object of the law is not so much to protect those who can rest at pleasure as to afford rest to those who need it, and who, from the conditions of society, could not otherwise obtain it. Moreover, if the law was not obligatory upon all, and those who desired to do so were permitted to engage in their usual vocation on Sunday, others engaged in the same kind of labor or business might, against their wishes, be compelled, by the laws of competition in business, to do likewise."

The defendant's studio was on the third floor of a building in Minneapolis. On a Sunday two men, one of whom was the state's only witness, went to the studio, apparently in quest of evidence. They tried the entrance door. It was locked. The defendant came from a side door into the hall. Upon inquiry he said he would take their pictures, though the studio was not supposed to be open. There was a lady present. It does not clearly appear that she was there for a sitting. It seems just as likely that she was there to examine proofs of pictures taken before. The defendant took the pictures of the two men, giving them several exposures, received pay, and the finished photographs were delivered a few days later.

Whether the taking of the pictures was a trade, manufacture or mechanical employment within the statute need not be discussed. Clearly enough it was work within the statute. It was not menial work. It was skilled work or even artistic work or professional work, but it was work. It is entirely clear that it was not a work of necessity or charity within the definition of the statute.

The conviction cannot be sustained, if it was necessary to show that the work done by the defendant was of a character interfering with the repose and religious liberty of the community. The taking of the pictures did not disturb the community. The conviction is sustained upon the ground that the prohibition was imposed in the legitimate exercise of the police power. It is a matter of common knowledge that photographic studios in times past and in times quite recent have been open on the whole or a part of each Sunday. In cities of considerable size studios, counting all grades of them, are numerous, and require the attendance of a considerable number of persons. To most of the proprietors their closing is not important if only competitors close. Com-

petition tends to make each do as the others do. Some establishments catering to street patronage may suffer an actual loss if they are not open Sundays. A portion of the public may suffer some inconvenience. However, the suffering of either the public or proprietors is not great. It was within the province of the legislature to determine that it was best that none should do business on Sundays. The language of the statute indicates such purpose. Unless given that effect a considerable number of persons, whose presence is necessary to the conduct of the business, will have for themselves no Sunday or but a part of a Sunday for rest or recreation or amusement or religious observances. There are kinds of work, not interfering with the repose and religious freedom of the community, not done in such a way that the public is annoyed, and not of such a character as to be subject to regulation under the police power, with which the law does not interfere though done on the Sabbath. And there are occasional technical or even substantial infractions of the statute, which the good sense of a tolerant community chooses to let pass without serious notice.

We uphold the conviction of the defendant upon the theory that he is one of a class so numerous that the police power of the state, for the common good of others in a like situation, may prohibit his working on the Sabbath day, though he does his work without interfering with the repose and religious liberty of the community.

Judgment and order affirmed.